THE STATE OF NEW JERSEY, PLAINTIFF, v. ANTHONY
CARMINATI, JOSEPH PAGANO, WILLIAM O'BRIEN, DE-
FENDANTS.

Superior Court of New Jersey
Law Division

Decided July 31, 1978.

*Mr. Robert B. Leaman,* Bergen County Assistant Prosecutor, for plaintiff.

*Mr. Thomas A. DeClemente* for defendant Pagano (*Messrs. Lewis & DeClemente,* attorneys).

*Mr. Vincent Basile* for defendant O'Brien.

HUOT, J. D. C. Defendants Joseph Pagano and William O'Brien move to dismiss the indictment in this matter which charges each of them with a violation of *N. J. S. A.* 2A:93–6, the bribery statute, and in a second count with conspiracy to commit the crime alleged in the first count. The case against defendant Anthony Carminati has been disposed of in other proceedings so that any reference to defendants herein applies only to the remaining defendants, Pagano and O'Brien.

The State charges that defendants offered $1,000 to Lt. Joseph Delaney of the Bergen County Prosecutor's Office in exchange for confidential information compiled by the New York State Police, specifically a list of names of persons about to be arrested upon the conclusion of a criminal investigation conducted by the New York State Police and the New York Attorney General's Office.

Defendants' first argument for dismissal contends that the indictment fails to allege any attempt to corruptly influence governmental or official conduct. Their conclusion stems from a four-prong argument:

(1) Lt. Delaney was not acting in an official capacity as a police officer of the State of New Jersey;

(2) Defendants did not possess the necessary *mens rea,* that is, they did not intend to influence a public official;

(3) There was no action by an official, or official action of any department of New Jersey involved;

(4) The sale of information is not encompassed in the bribery statute because the sale of information does not influence official action.

Additionally, defendants argue for a dismissal of the indictment on the ground that there is no allegation that anything was procured from any office or department or subdivision of New Jersey since the information provided by Lt. Delaney was exclusively from the State of New York.

Lastly, defendants challenge the jurisdiction of this court, contending that any crime, if any were committed, occurred in the State of New York and thus may not be tried as a violation of New Jersey law.

For the purpose of their motion defendants admit the truth of the allegations of the indictment except that the offer of $1,000 was made to Lt. Delaney "as a police officer." Their denial that the offer was made to him "as a police officer" is based upon the testimony adduced from Lt. Delaney before the grand jury. They point to page 5 of the transcript:

At one point, in talking to Mr. Carminati, I indicated to him that I had a cousin in New York State and if he could do something for Joey, meaning Joseph Pagano, I'm sure Joe will make it worth your while and with that, we decided, we meaning Carminati and myself, to take a ride and he was going to show me where he eats in one particular restaurant, which was the Four Star Steak House.

While the above quotation is not a model of clarity, it does establish that Lt. Delaney referred to a "cousin" in New York without any other description.

Subsequently, on March 5, 1975, in Englewood Cliffs, Lt. Delaney was introduced to defendants by Carminati. A description of that meeting was contained in the grand jury transcript at page 6:

During that meeting, I was introduced to Joseph Pagano by Anthony Carminati. William O'Brien, Billy "O" as he called him was present at the meeting and Mr. Carminati indicated to Mr. Pagano that I would have some information relative to him and some of his associates regarding a gambling raid that was about to take place in the State of New York involving Mr. Pagano and some of his friends. And that I had a list of the names of the people to be arrested. So, I had a discussion with Pagano and he asked me to see the list and

I showed him the list. He looked over the list, named the people that he knew.
Of course, he was on the list himself, so was William O'Brien. He asked me if he could have a copy of the list and I said that no, I couldn't give him a copy of the list because it was in my handwriting and also the handwriting of the New York State Trooper.

There is nothing in the above-quoted statement to indicate that defendants were advised of Delaney's cousin. It merely states that Delaney would be able to provide some information to them concerning a gambling raid about to take place in New York, and that the list of names contained the handwriting of a New York trooper. Thus, defendants' argument that they thought Delaney was not acting in his official capacity but as a relative of someone in New York must fail. To draw such a conclusion as defendants urge would require the court to infer that Carminati told defendants about Delaney's "cousin." But it is equally inferable that Carminati told defendants of Delaney's official capacity as a police officer. Certainly, the grand jury must have drawn the latter inference. In any event, there is nothing in the grand jury testimony to substantiate defendants' argument of lack of *mens rea* or that Delaney was acting in a family capacity, particularly when at their meeting there was a reference to a New York trooper but no reference to a cousin.

In connection with their first argument, defendants also contend that the indictment should be dismissed because the offer of money (which is admitted for the purpose of the motion) was not to induce any official action by any official or agency of any government of New Jersey or its subdivisions. Accepting Lt. Delaney as a police officer, defendants contend that the action bargained for, that is, the obtaining and transmittal of information which was obtained by the authorities in New York, is not something that is "connected with or appertaining to" Delaney's position as a police officer of New Jersey. Defendants argue that the decisions in all reported cases establish that the essence of the crime of bribery is the influencing of some official

duty or act, and that the procurement of confidential information, particularly from another state, has nothing whatever to do with the official conduct or act of a New Jersey police officer.

The question is, "what duty connected with or appertaining to" the duties of a New Jersey police officer were influenced by this transaction?

To answer that question the court believes it should be considered from the perspective of whether the police officer could be disciplined or convicted for his actions. From that perspective it is clear to this court that Lt. Delaney could be convicted of misconduct in office.

Misconduct in office is defined as unlawful behavior in relation to official duties by an officer entrusted with the administration of law and justice.

If there were no agreement betwen the authorities of New York and New Jersey and if Lt. Delaney solicited a New York trooper, even if his cousin, to obtain information and provide him with a list of those to be arrested in New York in exchange for money (which is what appeared to be the case to the defendants herein), then Lt. Delaney would be offering a bribe to the New York trooper. As such his conduct would be criminal and certainly in violation of his duty to enforce the law.

While the facts involved in *State v. Cohen*, 32 *N. J.* 1 (1960), are admittedly different, the statement contained therein remains valid:

It would seem to be only another manifestation of the principle behind this duty to state that it is incumbent on police officers not to solicit, in furtherance of an evil or corrupt motive, others to commit crimes. [at 9]

The court recognizes that the role of Lt. Delaney in this transaction, viewed in a light most favorable to defendants, is that he was a mere purveyor of information obtained by him from a police officer in New York. The court also recognizes that the sale of information by a public official

which does not influence his action does not fit within the common law definition of bribery. The court further recognizes that no court in New Jersey, since the adoption of *N. J. S. A.* 2A:93-6 by the Legislature in 1937, has construed the statute to encompass a factual situation such as we have here. But no court was ever called upon to consider it before. However, there are statements in the decisions in our appellate courts, including those cited by defendants, which indicate the conclusion.

*State v. Begyn,* 34 *N. J.* 35 (1961), cited by defendants, involved an indictment for misconduct in office, not bribery. However, there was some discussion of bribery and the quotation cited by defendants in their brief does appear therein. But, that quotation suggests that the factual situation assumed herein, that Delaney was only a seller of information, is encompassed by our bribery statute. Certainly the offer to pay for such information would incline Delaney to "act contrary to the known rules of honesty and integrity."

Likewise, the Appellate Division, in *State v. Ferro,* 128 *N. J. Super.* 353 (1974), recognized the concern of the Legislature with the corruption of persons in positions of trust.

Prior to the adoption of the statute in its present form the law read:

> Any person who shall directly or indirectly give, or receive, or promise, contract or agree to give or receive, any sum or sums of money, or any goods, chattels, gift, lands or real estate, or any other thing, present or reward whatsoever, to secure or obtain, or to give out or grant the printing of blanks, notices, advertisements or any other printing, or any other work or thing, connected with, or in or appertaining to, any office or department of the government of this state, or any office or department of the government of any county, city, town, township, borough or other place in this state, shall be guilty of a misdemeanor. [*L.* 1898, c. 235, § 30]

The Revised Statutes, *R. S.* 2:114-6 reads as follows:

> Any person who shall directly or indirectly give or receive, or promise or agree to give or receive, any money, goods, chattels, real estate, or any other thing, present or reward, to secure or

obtain, or to give out or grant the printing of blanks, notices, advertisements or any other printing, or any other work or thing connected with or appertaining to any office or department of the government of the state or of any county, municipality or other political subdivision thereof, shall be guilty of a misdemeanor.

The statute, *N. J. S. A.* 2A:93–6, reads as follows:

Any person who directly ·or indirectly gives or receives, offers to give or receive, or promises to give or receive any money, real estate, service or thing of value as a bribe, present or reward to obtain, secure or procure any work, service, license, permission, approval or disapproval, or any other act or thing connected with or appertaining to any office or department of the government of the state or of any county, municipality or other political subdivision thereof, or of any public authority, is guilty of a misdemeanor.

*N. J. S. A.* 2A:93–6, as amended 1977, reads as follows:

Any person who directly or indirectly gives or receives, offers to give or receive, or promises to give or receive any money, real estate, service or thing of value as a bribe, present or reward to obtain, secure or procure any work, service, license, permission, approval or disapproval, or any other act or thing connected with or appertaining to any office or department of the government of the State or of any county, municipality or other political subdivision thereof, or of any public authority, is guilty of a misdemeanor if the amount of money or value of the real estate, service or thing is $200.00 or less, and if the amount of money or value of the real estate, service or thing is over $200.00, such person is guilty of a high misdemeanor.

A review of the statutes shows ever increasing legislative concern with the purity of public officials. The language of the statute today is very broad and bespeaks an intent to prohibit the giving or receiving of anything which has value to any person, whether such person is an official or not, for the purpose of securing anything that is connected in some way to any governmental function. The scope of the language indicates that anything connected with government must be "purer than Caesar's wife."

Defendants would have this court ignore the legislative mandate and restrict the meaning of the statute to a codification of the common law rule of bribery. Defendants contend that the only expansion of that common law rule of bribery justified by the legislative language is the interpretation given to it by the Appellate Division in *State v. Ferro, supra,* to include people in apparent positions of access to public officials.

This court rejects such constraint in the absence of a definitive statement by an higher court. The Legislature, as the elected representatives of the people, has expressed the citizens' desire for officials and employees of honesty and integrity. The courts must honor that desire; indeed, all of us must be above reproach for government to retain the confidence of the people from which our authority flows.

There is no case submitted by counsel or found by the court's independent research which requires interpretation of the statute as argued for by defendants. All courts which have had occasion to pass upon the statute have had different questions before it: *State v. Farinella,* 150 *N. J. Super.* 61 (App. Div. 1977) (defendant a freeholder who received money for county approval for purchase of building) ; *Hyland v. Simmons,* 152 *N. J. Super.* 569 (Ch. Div. 1977) (defendant councilman received money for influence concerning a zoning variance) ; *State v. Gora,* 148 *N. J. Super.* 582 (App. Div. 1977) (defendant, former member of council, paid for fixing traffic ticket) ; *State v. Begyn,* 34 *N. J.* 35 (1961) (indictment was for misconduct in office) ; *State v. Sherwin,* 127 *N. J. Super.* 370 (App. Div. 1974), certif. den. 65 *N. J.* 569 (1974) and *cert.* den. 419 *U. S.* 801, 95 *S. Ct.* 9, 42 *L. Ed.* 2d 32 (1974) (Contribution to political campaign without a personal benefit sufficient showing of violation of statute) ; *State v. Ferro,* 128 *N. J. Super.* 353 (App. Div. 1974) (discussed above; apparent ability to influence).

A review of the above cases establishes that the specific question before this court has never been addressed.

Lt. Delaney, as indicated above, sold information to defendants which advised them of an impending arrest. The information was valuable despite the fact that the arrest occurred. In the opinion of codefendant Carminati, as quoted in the grand jury transcript, it gave them "the opportunity to clear their house of any contraband that they might have including guns for which they could receive an additional sentence."

The sale of such information by one charged with the enforcement of law is clearly a breach of his duty. It certainly is contrary to honesty and integrity for a police officer to disclose confidential information concerning persons subject to criminal investigation. The fact that the disclosure, in this case, did not affect any investigation by members of Lt. Delaney's department or any department of New Jersey does not, in this court's opinion, affect the result. New Jersey is concerned with the honesty and integrity of its officials and to that end has adopted a broad statute prohibiting the giving or receipt of any reward for doing anything connected with or appertaining to any office.

"Appertain" means: "To belong to; to have relation to; to be appurtenant to," *Black's Law Dictionary* (rev. 4 ed. (1968)), and according to *Webster's New Collegiate Dictionary* (1976), it is defined as: "to belong or be connected as a rightful part or attribute."

Thus, the question posed is whether the sale of the New York information relates or pertains or has a relationship to the position of a police officer of New Jersey. This court finds that it does not matter what means were used to secure such information. Its disclosure to persons not authorized to possess such information is a breach of duty of a police officer. It follows, then, that one who seeks to purchase such information is offering money to procure some service or other thing connected with or appertaining to a position of police officer.

## II

Defendants contend that the indictment should be dismissed because it fails to allege that anything was procured from any office or department or subdivision of the State of New Jersey. What was said above with respect to the connection to the duty of a police officer is applicable here. But, this argument requires additional analysis.

Defendants' argument at this point is that the fruit of the bribe must be connected with or appertain to a governmental function of New Jersey or one of its subdivisions.

In other words, that the list of names furnished by Lt. Delaney must be "connected with or appertain to" the Bergen County Prosecutor's Office or some other office or department of some governmental unit of New Jersey. Defendants argue that since the list of names was from a New York agency there can be no violation of *N. J. S. A.* 2A:93–6.

This statute may not be a model of clarity but an analysis of the language used, and an elimination of extraneous modifiers (in the context of this case where defendants are charged with giving rather than receiving) establishes that it prohibits a person from giving anything of value to obtain any act or thing, if that act or thing pertains to a New Jersey governmental office or department.

It is clear that the words "connected with or appertaining to" modify the words "work, service, license, permission, approval or disapproval, or any other act or thing." It is also clear that the words "any office or department of the government of the state or of any county, municipality or other subdivision thereof, or of any public authority," are the objects of the preposition "with" in the phrase "connected with" and the objects of the preposition "to" in the phrase "appertaining to".

Thus, the inquiry must be whether the *act* of Lt. Delaney in transmitting the list of names, or the list of names itself, was the *thing* connected with or appertain to an office or department of government.

Clearly, the list here involved, the *thing,* in no way pertains to any office or department of any governmental unit of New Jersey. Our inquiry, then, must be directed to the *act,* the transmitting of the list. With equal clarity it can be seen that this act was in no way connected to any governmental unit of New Jersey.

Was his act, then, in any way connected with or did it appertain to any New Jersey governmental office?

The word "office" used in the statute is modified by the phrase "of the government" and thus signifies a "public office." The words "of the state," limit that public office to New Jersey because the word "the" is definite. Had the Legislature intended to include governmental offices or departments outside of New Jersey it would have substituted the words "a", "an", or "any" for the word "the" in that phrase.

The word "office" or "public office" defines a position in government that is possessed of rights to be exercised and duties to be performed for the benefit of the people. A police officer, thus, is one who has the right to exercise authority and the duty to enforce the law.

Defendants argue that the sale of this information by a private citizen could not be a violation of *N. J. S. A.* 2A:93-6, and since Lt. Delaney is a private citizen vis-a-vis New York, the result should be the same. However, that argument ignores the status of the bribee in this case and the explicit, albeit broad, language of the statute. Here, money was promised by the defendants as a reward for an *act* of a police officer. That act pertained to his *office* because it appertained to his duty to enforce the law.

Defendants' argument also misses the distinction between a police officer's right to exercise authority to enforce the law and his duty to do so. Concededly, Lt. Delaney has no authority to act as a police officer outside New Jersey, except in fresh pursuit circumstances. But his duty to enforce the law includes a duty to refrain from interfering with the enforcement of law by those having such authority in another

jurisdiction as well as the duty not to aid or abet others in another jurisdiction to avoid or evade the processes of law. While the latter did not occur in this case, his acts had the clear potential for doing just that, and this does appertain to his public office in New Jersey.

### III

Next, defendants contend that the grand jury did not have before it a *prima facie* case to justify the indictment. The thrust of this argument is that defendants understood that the source of the information was a cousin in New York. The invalidity of this argument was discussed in Point I above.

### IV

■ Defendants also challenge the jurisdiction of this court to try the matter. Their statement of law that a crime must be committed in New Jersey for New Jersey courts to have jurisdiction of the offense committed is accepted.

In applying the law to the facts here present defendants argue that, assuming the existence of a crime, that crime was committed in the State of New York rather than the State of New Jersey. Defendants cite the following facts in support of that argument:

(1) The information concerned arrests about to take place in New York;

(2) The arrests would be for offenses which allegedly occurred in New York;

(3) All the information was obtained from New York authorities;

(4) Defendants resided in New York;

(5) All monies were transferred in New York;

(6) All meetings, except one, occurred in New York.

Those six statements are admitted as true by the State and appear in the grand jury transcript. Defendants' fact statement which contends that defendant Pagano was telephoned

in New York does not appear in the transcript. It may be so, but it is not a fact as yet.

Defendants' statement that

> * *' * the place of the meeting is also purely coincidental. As a matter of fact, the meeting was proposed by Delaney in New Jersey purely as a matter of personal convenience, not because a criminal transaction was to occur in the State of New Jersey,

has no foundation at all. It is merely conjecture on defendants' part. From the grand jury transcript it appears that only one meeting between defendants and Lt. Delaney occurred in New Jersey. That was on March 5, 1975, at which time Delaney provided a list of names to Pagano and O'Brien, and Pagano told Delaney to give the figure to Carminati and it would be paid.

That testimony, if believed by the factfinder, clearly places the crime in New Jersey. The statute prohibits not only the giving of money but also the promise to give money. The testimony establishes a promise by Pagano.

The statute prohibits the promise "as a bribe, present, or reward." While it may not have been a "bribe" in the sense that it was offered for something to be done in the future, the testimony establishes that it was a *present* or *reward* for the act already done.

The illegal promise occurred in New Jersey. The *act* for which the reward was promised (that is the delivery of the list of names) occurred in New Jersey. Thus, the elements of the crime prescribed by the statute occurred in New Jersey. The statute does not require that the money change hands in New Jersey, indeed, a violation of the statute occurs even if the reward is never paid.

The court concludes that it does have jurisdiction over the subject matter of the indictment.

For all of the reasons expressed hereinabove, the motions of defendants to dismiss the indictment are denied.